UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| MICHAEL S. NUNALLY, | ) | |
| MARLA L. NUNALLY, | ) | |
| MARLA NUNALLY, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-02568-JRS-TAB |
| | ) | |
| CLAYTON MORRIS, | ) | |
| MORRIS INVEST, LLC, | ) | |
| NICOLE MECKLEY, | ) | |
| LINZI DEL CONTE, | ) | |
| DAVE KOEHN, | ) | |
| BLUE SKY PROPERTY MANAGEMENT, | ) | |
| LLC, | ) | |
| PAM STRICKLAND, | ) | |
| STEVE ROGERS, | ) | |
| KATE FREDERICO, | ) | |
| | ) | |
| Defendants. | ) | |

**Order on Motion to Dismiss (ECF No. 20)**

Invoking this Court's diversity jurisdiction, Plaintiffs Michael S. Nunally, Marla L. Nunally, and Marla Nunally, LLC ("Nunally" or "Plaintiffs") bring various common-law claims against Clayton Morris, Morris Invest, LLC, Nicole Meckley, Linzi Del Conte, Dave Koehn, Blue Sky Property Management, LLC ("Blue Sky"), Pam Strickland, Steve Rogers, and Kate Frederico (collectively, "Defendants"). (Am. Compl., ECF No. 10.) Marla Nunally, LLC, an entity owned by Michael and Marla Nunally, purchased several homes in Indianapolis from Defendants. Plaintiffs purchased the homes as investment properties, intending to lease them and collect rent. Plaintiffs allege that Defendants failed to fulfill their obligations by not rehabilitating

the properties, not marketing the properties to prospective tenants, not generating rent from the properties, and not managing the properties, leaving Plaintiffs with uninhabitable homes.  Nunally brings the following claims: breach of contract, fraud, fraud in the inducement, promissory estoppel, unjust enrichment, and offense against properties.

All Defendants except for Steve Rogers now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the following reasons, Defendants' Motion to Dismiss (ECF No. 20) is **denied in part** and **granted in part**.

## I.   Background[1]

Plaintiffs' Corrected First Amended Complaint ("Amended Complaint") alleges that Clayton Morris and Morris Invest are engaged in the business of recruiting real estate investors from outside the State of Indiana to purchase real estate within Indiana. (Compl., ECF No. 10 at 5.)  Clayton Morris, through Morris Invest, advertises himself and Morris Invest as real estate investors and offers courses on real estate investment in order to solicit potential investors. (*Id*.)  Through Morris Invest, Clayton Morris, Nicole Meckley, Linzi Del Conte, and Dave Koehn presented several properties to Plaintiffs and marketed property management services as part of the purchase of the homes, including rehabilitation of the properties, marketing the properties to prospective tenants, rent generation, and management of the properties. (*Id*.)  Plaintiffs also allege that Blue Sky, Pam Strickland, Steve Rogers, and Kate Federico

---

[1] Consistent with the Rule 12(b)(6) standard, Plaintiff's non-conclusory allegations are taken as true for purposes of Defendants' motion to dismiss.

recruited real estate investors and presented real estate investment opportunities to investors, including Plaintiffs.  (*Id.*)

On October 2, 2017,[2] Nunally purchased the following properties in Indianapolis, Indiana:

- 2951 North Euclid Avenue
- 3026 North Gale Street
- 2052 Nolan Avenue
- 3116 North Colorado Avenue
- 441 North Rural Street
- 3260 North Emerson Avenue
- 3345 North Tacoma Avenue
- 3025 Ethel Avenue
- 3436 North Chester Avenue
- 3610 East Vermont Street

(ECF Nos. 10-1–10; ECF No. 21-1–3.)[3]  On October 3, 2017, Nunally purchased the property located at 2953 North Euclid Avenue.  (ECF No. 10-11.)  Nunally alleges it purchased a property located at 3136 Station Street but clarifies in its Response Brief that this purchase was never completed.  (ECF No. 24 at 3 n.4.)  Additionally, Nunally listed, in the "Jurisdiction, Venue, and Parties" section of its Amended Complaint, a property located at 2406 Wheeler Avenue, but did not include this property in its

---

[2] Although Plaintiffs allege that these properties were purchased on September 18, 2017, and some of the Purchase Agreements were signed on September 18, 2017, the HUD Closing Statements and Warranty Deeds were signed on October 2, 2017.

[3] The Court may consider the Purchase Agreements, HUD Closing Statements, and Warranty Deeds attached to Plaintiffs' Amended Complaint and Defendants' Motion to Dismiss in ruling on Defendants' Motion to Dismiss.  *See* Fed. R. Civ. Pr. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.")

factual allegations or include a purchase agreement for this property.  (Am. Compl. ¶ 22(I), ECF No. 10.)

Plaintiffs allege that Defendants represented that the properties were being sold by Defendants, that Defendants would rehabilitate the properties, that Defendants would market the properties to prospective tenants, and that Defendants would manage the properties.  (Am. Compl., ECF No. 10 at 6.)  Defendants represented that the Plaintiffs were purchasing "turn-key" real estate investment properties.  (*Id*.)  These properties were never rehabilitated, nor did they generate any rental income for Plaintiffs.  (*Id*. at 10.)

On each of the Purchase Agreements for the properties purchased by Nunally, Clayton Morris signed his name under "Seller's Signature".  (ECF Nos. 10-1–10; ECF No. 21-1–3.)  However, the HUD Closing Statements and Warranty Deeds list "Oceanpointe Investments" as the seller of the properties.  (*Id*.)  Natalie Bastin signed these documents as a member of Oceanpointe Investments.  (*Id*.)

The Purchase Agreements state: "The purchase price listed above includes new construction on this property.  The seller agrees to rehab this property to rent ready condition."  (ECF Nos. 10-1–11 at 5; ECF No. 21-1 at 5.)  The Agreement does not contain any terms referencing marketing the properties to prospective tenants, rent generation, or management of the properties.

## II.   Legal Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In considering a Rule 12(b)(6) motion to dismiss, the court takes the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).  The Court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"[I]f a plaintiff pleads facts that show its suit [is] barred . . . , it may plead itself out of court under a Rule 12(b)(6) analysis." *Orgone Capital*, 912 F.3d at 1044 (quoting *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995)); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quoting *Hamilton v. O'Leary,* 976 F.2d 341, 343 (7th Cir. 1992)) (on a motion to dismiss "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim'"). "When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity . . . to amend the complaint to correct the problem if possible." *Bogie*, 705 F.3d at 608.  Nonetheless, leave to amend need not be given if amendment would be futile.  *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962).

### III.    Discussion

*A.  Breach of Contract*

Defendants argue that Plaintiffs' breach of contract claim must be dismissed for the following reasons: (1) a condition subsequent was violated in several of the Purchase Agreements, (2) none of the Purchase Agreements contain terms related to

marketing, rent generation, or property management, (3) Oceanpointe, not Defendants, was responsible for rehabilitating the properties, (4) the Purchase Agreements contain an integration clause, barring any prior and/or subsequent agreements, and (5) Natali Morris, Morris Invest, Nicole Meckley, Linzi Del Conti, Dave Koehn, Blue Sky Management, Pam Strickland, and Kate Federico are neither parties nor signatories to the Purchase Agreements.

In response, Plaintiffs do not address Defendants' argument that conditions subsequent were violated in several of the Purchase Agreements. Plaintiffs argue that although there is no written agreement regarding securing tenants or property management, Defendants sold Plaintiffs a "turn-key" property, making them a party to an investment contract with Plaintiffs. Plaintiffs also argue that they were led to believe that Defendants, "not an unrelated entity that Plaintiffs had never heard of before," were selling them the properties and would rehabilitate them. Plaintiffs dispute that the integration clause in the Purchase Agreements prevents them from introducing extrinsic evidence relating to the rehabilitation, rent generation, or management of the properties. Lastly, Plaintiffs maintain that all the defendants were involved in selling them "turn-key" properties, making them parties to an investment contract with Plaintiffs.

In reply, Defendants argue that because Plaintiffs did not address their condition subsequent argument, Plaintiffs have forfeited the argument. Defendants also contend that Plaintiffs cannot embellish the contractual obligations in the Agreement

with the use of the word "turnkey" which does not appear in the Agreement.  Defendants argue that the terms of the Agreement are clear and unambiguous, rendering any extrinsic evidence inadmissible to add to, vary, or explain the terms of the contract.

1. Condition Subsequent

The Purchase Agreements require the parties to close on the sale of the properties within a certain period of time unless an extension of time is mutually agreed to by the parties.  The 3026 North Gale Avenue, 2052 Nolan Avenue, 3116 North Colorado Avenue, 441 North Rural Street, and 3260 North Emerson properties failed to close by their respective deadlines.  Defendants argue that the closing deadlines are conditions subsequent to the continued execution of the contract, and because the parties violated that condition it defeated the contract.  The Court need not address this argument, however, because Plaintiffs have failed to respond and have therefore waived any argument in opposition.  *See, e.g., Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1043 (7th Cir. 1999) (upholding the dismissal of a complaint because plaintiff failed to "respond responsively to the motion to dismiss," noting that "our system of justice is adversarial, and our judges are busy people . . . they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning"); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments . . . are waived[.]").  Plaintiffs' breach of contract claims regarding the 3026

North Gale Avenue, 2052 Nolan Avenue, 3116 North Colorado Avenue, 441 North Rural Street, and 3260 North Emerson properties are **dismissed**.

    2.  <u>Rent Generation and Property Management</u>

Plaintiffs' breach of contract claims against the remaining properties for failure to generate rent and manage the properties must be dismissed as well. The Purchase Agreements do not contain any provisions requiring anyone to market the properties to prospective tenants, generate rental income, or manage the properties. Plaintiffs argue that even though the Purchase Agreements do not include express terms re-garding securing tenants or managing the property, that does not negate the possi-bility that the parties entered into an agreement regarding those matters at some point. But the Purchase Agreements contain an integration clause, which provides: "This Agreement constitutes the sole and only agreement of the parties and super-sedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent." (*See, e.g.*, 3026 North Gale Street Purchase Agreement, ECF No. 10-2 at 4.) Plaintiffs have not alleged that the Purchase Agreements were changed by both parties' written consent, as required by the Purchase Agreements and the Indiana Statute of Frauds. *See* IND. CODE § 32-21-1-1.

Plaintiffs also argue that Defendants' role in selling Plaintiffs a "turn-key" invest-ment scheme makes Defendants parties to an investment contract with Plaintiffs. While not entirely clear from their brief, Plaintiffs argument seem to argue that in selling Plaintiffs the properties, Defendants unlawfully sold them an unregistered

security.   But Plaintiffs did not allege violations of any securities laws in their Amended Complaint, and they cannot do so now.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (plaintiffs may not amend their complaint in their brief in response to the motion to dismiss).

Additionally, Plaintiffs' reliance on *Neurology & Pain Mgmt. Assocs., P.C. v. Bunin,* No. 3:17-CV-035 JD, 2018 WL 3830059 (N.D. Ind. Aug. 13, 2018), is unpersuasive.  In *Bunin*, the Court found that the plaintiff had stated sufficient facts to support a plausible claim for breach of contract, despite the fact that the contract lacked signatures and contained blank spaces regarding the defendant's compensation and scope of work.  *Id.* at *3.  The Court reasoned that the plaintiff sufficiently alleged that the parties accepted and acted pursuant to the contract's terms, despite the lack of signature and blank spaces.  *Id.*  In contrast, Nunally has not alleged facts that would support a plausible claim for breach of contract regarding rent generation and managing the property.  The Purchase Agreements contain no language about these obligations and specifically state that the Purchase Agreement is the sole and only agreement of the parties.  Also, Defendants here did not act to generate rents or manage the properties.  Accordingly, Plaintiffs' breach of contract claims pertaining to rent generation and property management for the 2951 North Euclid Avenue, 3345 North Tacoma Avenue, 3025 Ethel Avenue, 3436 North Chester Avenue, 3610 East Vermont Street, and 2953 North Euclid Avenue properties are **dismissed**.

3.  Rehabilitation

Remaining are breach of contract claims for the rehabilitation of the properties at 2951 North Euclid Avenue, 3345 North Tacoma Avenue, 3025 Ethel Avenue, 3436 North Chester Avenue, 3610 East Vermont Street, and 2953 North Euclid Avenue. The Purchase Agreements state: "The seller agrees to rehab this property to rent ready condition." (*See, e.g.*, 3345 North Tacoma Avenue Purchase Agreement, ECF No. 10-7 at 5.)  Each Purchase Agreement at issue is signed by Clayton Morris above the line "Seller's Signature." (*See, e.g. id.*)  Although the HUD Closing Statements and Warranty Deeds list Oceanpointe Investments as the seller, at this stage in the proceedings, Plaintiffs have sufficiently pleaded that Morris was a party to the Purchase Agreement and breached that agreement by failing to rehabilitate the properties.

However, Plaintiffs have not sufficiently pleaded that Natali Morris, Morris Invest, Nicole Meckley, Linzi Del Conte, Dave Koehn, Blue Sky Property Management, Pam Strickland, or Kate Federico were parties to the Purchase Agreements.  The latter Defendants did not sign the Purchase Agreements, nor have Plaintiffs even alleged that they were parties to the agreements.  As such, they cannot be held liable for the failure to rehabilitate the properties.

Thus, Plaintiffs' breach of contract claim for the rehabilitation of the 2951 North Euclid Avenue, 3345 North Tacoma Avenue, 3025 Ethel Avenue, 3436 North Chester Avenue, 3610 East Vermont Street, and 2953 North Euclid Avenue properties **may proceed** against Defendant Clayton Morris, but is **dismissed** as to Natali Morris,

Morris Invest, Nicole Meckley, Linzi Del Conte, Dave Koehn, Blue Sky Property Management, Pam Strickland, and Kate Federico.

### B. Fraud

Plaintiffs also allege that Defendants intended to deceive Plaintiffs by representing that they were receiving a "turn-key" real estate investment.  Defendants argue that Plaintiffs have not pleaded fraud with the specificity required by Rule 9(b), that the alleged misrepresentations relate to future conduct or opinion and therefore cannot be the subject of a claim for fraud, and that the fraud claim is merely a repackaged version of its breach of contract claim.  In response, Plaintiffs set out the "who, what, where, when, and how" of its fraud claim, and argue that Defendants' statements were not promises of future conduct but statements of existing fact about the nature of the investment product Defendants sold to Plaintiffs.

Under Indiana law, a claim for fraud exists when there is "a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation [is] relied upon to the detriment of the relying party." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 675 (Ind. 1997) (citations omitted).  "Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008), *as modified* (Nov. 13, 2008) (citing *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind. Ct. App. 2000)).

Federal Rule of Civil Procedure 9(b) requires plaintiffs pleading fraud to do so with particularity. To comply with Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud, including the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). The rationale underlying Rule 9(b) is to provide the defendant with fair notice and protect a defendant's reputation from unfair harm and "fishing expeditions." *See Hirata Corp. v. J.B. Oxford & Co.,* 193 F.R.D. 589, 592 (S.D. Ind. 2000) "Rule 9(b) achieves this result by 'forc[ing] the plaintiff to do more than the usual investigation before filing his complaint.'" *Id.* (quoting *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999), *cert. denied*, 528 U.S. 874 (1999)). Plaintiffs have failed to do so here.

Plaintiffs have not named the individual or individuals who made the misrepresentations to them. Plaintiffs merely allege that "Defendants represented" that the properties would be sold, rehabilitated, marketed to prospective tenants, and managed by Defendants. (Am. Compl. ¶¶31-33, ECF No. 10.) Such general and conclusory allegations do not put Defendants on notice as to who exactly is alleged to have made what misrepresentation. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (citations omitted) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.").

Nor have Plaintiffs plead the time, place, and method of communication related to the misrepresentation. In their Response Brief, Plaintiffs state that the fraudulent statements were made "leading up to and directly after Plaintiffs purchased the properties." Even if this allegation were particular enough to meet Rule 9(b)'s stringent pleading requirements, that statement is not contained in their Amended Complaint. Plaintiffs cite to paragraphs 36-47 of their Amended Complaint, but these paragraphs merely detail the dates on which Plaintiffs purchased each property and do not mention any misrepresentations by Defendants. Plaintiffs also state in their Response Brief that "plaintiffs were in Texas and the Morris Defendants were in New Jersey and Indianapolis at the time the misrepresentations were made" and cite to paragraphs 3, 5-17, and 20 of their Amended Complaint. Again, the Amended Complaint does not contain this allegation. The cited paragraphs simply list the citizenship of each party for purposes of jurisdiction. This is not sufficient. *See Pirelli Armstrong,* 631 F.3d at 448 (plaintiffs may not amend their complaint in their brief in response to the motion to dismiss). Lastly, Plaintiffs make no allegations as to what method of communication (in person, telephone, e-mail, etc.) Defendants used to make the fraudulent statements. Without more specifics, Defendants cannot be expected to parse all communications that occurred between themselves and Plaintiffs in order to determine which might possibly qualify as fraudulent in Plaintiffs' opinion.

Because Plaintiffs have failed to plead their fraud claim with particularity as required by Rule 9(b), the Court need not address the Defendants' other arguments in support of dismissal. Plaintiffs' fraud claim is **dismissed**.

13

### C. *Fraud in the Inducement*

A claim for fraud in the inducement must also comply with Rule 9(b)'s heightened pleading standard. *See* F.R.C.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As explained above, Plaintiffs have failed to plead with particularity the "who, what, when, where, and how" of Defendants' alleged misrepresentations. Therefore, Plaintiffs' fraud in the inducement claim similarly is **dismissed**.

### D. *Promissory Estoppel*

Plaintiffs allege that "Defendants made promises to Plaintiffs that the properties would be rehabbed and repaired to make the properties tenant rent ready" and that Plaintiffs reasonably relied on those promises. (Am. Compl., ECF No. 10 at 18.) Defendants argue that Plaintiff's promissory estoppel claim must be dismissed because Plaintiffs did not plead Defendants' alleged fraudulent actions with particularity, as required by Federal Rule of Civil Procedure 9(b), because Indiana law does not permit claims for promissory estoppel that are founded on a written contract between the parties, and because Plaintiffs did not properly plead their promissory estoppel claim in the alternative. Plaintiffs dispute that they must comply with 9(b)'s heightened pleading standard, and argue that if they did have to so comply, they have sufficiently pleaded the "who, what, where, when, and how" of the fraud.

"[A] party asserting promissory estoppel must establish five elements: (1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial

nature and (5) injustice can be avoided only by enforcement of the promise." *Grdinich v. Plan Comm'n for Town of Hebron*, 120 N.E.3d 269, 279 (Ind. Ct. App. 2019) (internal quotation marks and citations omitted).   However, promissory estoppel permits recovery only where no contract in fact exists.  *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008).   Plaintiffs' promissory estoppel claim "emerge[s] out of a pattern of fraudulent conduct [Plaintiffs] insinuate[] the [Defendants] engaged in."  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013).   Therefore, this claim falls under the Rule 9(b) requirement that allegations of fraud must be plead with particularity.   *Id.*

The Court has found that no contract exists between Nunally and the Defendants, other than Clayton Morris, with respect to the rehabilitation, rent generation, and management of the properties, so, while these claims could not be pursued against Clayton Morris, Plaintiffs would not be barred from pursuing these claims against the other Defendants under a promissory estoppel cause of action.   However, as the Court explained above in Section B, Plaintiffs have not sufficiently pleaded the "who what, when, where, and how" of Defendants' alleged misrepresentations pursuant to Rule 9(b).   Therefore, Plaintiffs' promissory estoppel claim is **dismissed** against all Defendants.

### E.  Unjust Enrichment

Plaintiffs allege that Defendants' retention of the payments made by Plaintiffs is unjust, as Defendants never repaired the properties as promised.   Defendants again argue that Plaintiffs' unjust enrichment claim sounds in fraud and is subject to Rule

15

9(b)'s heightened pleading standards.  The Court agrees.  Although unjust enrich-
ment is not a fraudulent tort, "Rule 9(b) applies to 'averments of fraud,' not [just]
claims of fraud, so whether the rule applies will depend on the plaintiffs' factual alle-
gations." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)
(citations omitted). "A claim that 'sounds in fraud'—in other words, one that is prem-
ised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened plead-
ing requirements." *Id.*  Plaintiffs' unjust enrichment claim emerges from a pattern
of fraudulent conduct that Plaintiffs insinuate Defendants engaged in, *i.e.* selling de-
bilitated properties with no intention of repairing or managing them, despite such
promises.  Because Plaintiffs have not plead Defendants' alleged misrepresentations
with the required specificity, their unjust enrichment claim must be **dismissed**.

### F. *Offense Against Properties*

Lastly, Plaintiffs allege that Defendants fraudulently accepted money from Plain-
tiffs in exchange for a "turnkey" real estate investment property that Defendants had
no intention or ability to provide to Plaintiffs and that Defendants made statements
that were misleading in order to defraud Plaintiffs.  Plaintiffs' offense against prop-
erties claim also sounds in fraud and is subject to Rule 9(b), yet fails to allege any
misrepresentations with the requisite detail.  Accordingly, Plaintiffs offense against
properties claim is **dismissed**.

16

## IV.    Conclusion

For the reasons stated above, Defendants' motion to dismiss is **denied in part** and **granted in part**.  Plaintiffs' breach of contract claim against Natali Morris, Morris Invest, Nicole Meckley, Linzi Del Conte, Dave Koehn, Blue Sky Property Management, Pam Strickland, and Kate Federico is **dismissed**.  Plaintiffs' fraud claim against all Defendants is **dismissed**.  Plaintiffs' fraud in the inducement claim against all Defendants is **dismissed**.  Plaintiffs' promissory estoppel claim against all Defendants is **dismissed**.  Plaintiffs' unjust enrichment claim against all Defendants is **dismissed**.  Plaintiffs' Offense Against Properties claim against all Defendants is **dismissed**.

However, Plaintiffs are **allowed twenty-one days** within which to file an amended complaint to address the deficiencies identified in this order, provided Plaintiffs can do so consistent with counsel's obligations under Fed. R. Civ. P. 11. Otherwise, these claims will be dismissed with prejudice.

Plaintiffs' breach of contract claim regarding Clayton Morris's failure to rehabilitate the 2951 North Euclid Avenue, 3345 North Tacoma Avenue, 3025 Ethel Avenue, 3436 North Chester Avenue, 3610 East Vermont Street, and 2953 North Euclid Avenue properties **may proceed**.  The Parties are encouraged to confer with the Magistrate Judge regarding settlement prior to trial.

**SO ORDERED.**

Date:   8/7/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution via EM/ECF to all registered parties.